UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| KURT L. BUTLER | : | |
| TRACY L. BUTLER | | |
| Debtors | : | Bankruptcy No. 10-12776 |

| | | |
|---|---|---|
| KURT L. BUTLER | : | |
| TRACY L. BUTLER | | |
| Plaintiffs | : | |
| v. | : | |
| HSBC MORTGAGE SERVICES, INC. | : | Adversary No. 10-0317 |
| Defendant | : | |

..........................................

STATEMENT OF REASONS IN SUPPORT OF ORDER

..........................................

AND NOW, the above-captioned plaintiffs having commenced an adversary proceeding against defendant HSBC Mortgage Services, Inc.,

And the plaintiffs contend in their complaint that HSBC's asserted second mortgage lien should be avoided under 11 U.S.C. § 506 as the value of the collateral is less than the amount owing on the first mortgage lien,

And HSBC answered, asserting that the value of the collateral exceeds the amount owing on the first mortgage,

And trial having been held,[1]

---

[1] Both parties declined the opportunity to submit post-trial memoranda.

And the plaintiffs filed a joint chapter 13 bankruptcy petition on April 6, 2010,

And the plaintiffs own the real property located at 560 East Boot Road, West Chester, Pennsylvania,

And defendant HSBC has filed two proofs of claim in this bankruptcy case, docketed on the claims register as claims nos. 3 and 4,

And in proof of claim #4, HSBC asserts a secured claim in the amount of $295,971.33, pursuant to a mortgage and note dated March 8, 2006, with the collateral being the East Boot Road realty,

And in proof of claim #3, HSBC asserts a secured claim in the amount of $110,372.69, pursuant to a mortgage and note dated March 8, 2006, with the collateral being the East Boot Road realty,[2]

And the parties agreed at trial that the lien in the amount of $295,971.33 is in first position. See also Complaint and Answer, ¶ 6. They also agreed that, for purposes of this adversary proceeding, HSBC should be considered as the lienholder, even though the mortgage agreements identify another entity as mortgagee. See also Complaint and Answer, ¶ 5,

And the plaintiffs offered in evidence an appraisal report stating that as of March 5, 2010, the East Boot Road property had a fair market value of $240,000. Ex. 1,

And HSBC offered in evidence an appraisal report stating that as of March 5, 2010, the East Boot Road realty had a fair market value of $309,000. Ex. D-1,

---

[2]Both parties stated in open court that for purposes of this adversary proceeding I should accept the averments in the two proofs of claim as true.

2

And each appraisal report was supported by testimony from appraisers, whose expertise was not challenged,

And both appraisers used a sales comparison approach to valuation. Exs. 1, D-1. In reaching their different conclusions, however, the two appraisers relied upon different comparable sales data. They also differed on the condition of the plaintiffs' realty. The plaintiffs' expert, Mr. Ashford, considered the realty to be somewhat below average condition; HSBC's expert, Mr. Freeman, considered the property to be in average condition,[3]

And the instant adversary proceeding arises from the interplay of 11 U.S.C. §§ 506(a), (d) and 1322(b)(2). As the Third Circuit Court of Appeals has explained:

> The normal rule in bankruptcy is that a claim that is secured by a lien on property is treated as a secured claim "only to the extent of the value of the property on which the lien is fixed." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 239 . . . (1989). To the extent that the amount of the claim is greater than the value of the property, it is considered unsecured. 11 U.S.C. § 506(a)(1). "Thus, a claim that is not fully collateralized can be modified, and the creditor said to be 'crammed down' to the value of the collateral." In re Ferandos, 402 F.3d 147, 151 (3d Cir. 2005).

---

[3] Both appraisers noted that the two full bathrooms in the property were unusable, except for the use of a tub in one bathroom. It appears that both bathrooms were in the process of being renovated but renovations ceased. The debtors and their three children have the use of a half bathroom at their home.

The appraisers differed as to the effect that such bathroom conditions have upon the value of the realty. HSBC's appraiser essentially deducted $8,000 owing to the condition of both bathrooms. The plaintiff's appraiser thought the deduction in value closer to $20,000. They also differed as to the diminution in value owing to the realty's lack of a basement, the property's location (the plaintiffs' appraiser opined that he observed considerable street traffic) and the lack of central air conditioning. Exs. 1, D-1.

Neither appraiser noted, as Ms. Butler testified, that the electrical wiring limited the number of appliances that could be operated at the same time on any given circuit within the house.

3

> Section 1322(b)(2) of the Bankruptcy Code carves out an exception to this general rule. That provision permits a debtor in a Chapter 13 case to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2) (emphasis added). The purpose of § 1322(b)(2) is "to encourage the flow of capital into the home lending market" by affording anti-modification protection to home mortgage lenders. Nobelman v. Am. Sav. Bank, 508 U.S. 324, 331 . . . (1993) (Stevens, J., concurring); see also Ferandos, 402 F.3d at 151 ("The legislative history of § 1322(b)(2) 'indicates that it was designed to protect and promote the increased production of homes and to encourage private individual ownership of homes . . . .' " (quoting In re Davis, 989 F.2d 208, 210 (6th Cir.1993))).

In re Scarborough, 461 F.3d 406, 409-10 (3d Cir. 2006) (citations and footnote omitted),

And to the extent a chapter 13 debtor seeks to apply the provisions of section 506(a) to a lien on his or her residence, the provisions of section 1322(b)(2) preclude such relief, unless the value of the residence is less than the amount owed to liens of greater priority, i.e., the mortgage is wholly unsecured. In re McDonald, 205 F.3d 606, 615 (3d Cir. 2000) ("For the foregoing reasons, we hold that a wholly unsecured mortgage is not subject to the antimodification clause in § 1322(b)(2)."), cert. denied sub nom., Master Financial, Inc. v. McDonald, 531 U.S. 822 (2000),

And therefore if HSBC, as junior lienholder, holds a wholly unsecured lien on the debtors' residence, this lien can be avoided under section 506 and the claim allowed only as unsecured.[4] See, e.g., In re McDonald; In re Mann, 249 B.R. 831 (B.A.P. 1st Cir. 2000). HSBC will hold a wholly unsecured lien only if the value of the debtors'

---

[4]"The term 'strip off' is used when a junior mortgage is totally unsecured, whereas the term 'strip down' is used when a mortgage is partially unsecured and partially secured." In re Talbert, 344 F.3d 555, 556 n.1 (6th Cir. 2003).

4

residence is less than or equal to the amount owing of all liens with greater priority (i.e., its first mortgage lien). See, e.g., In re Griffey, 335 B.R. 166 (B.A.P. 10th Cir. 2005),

And in this proceeding, the parties agree that the first mortgage lien is in the amount of $295,971.33. Thus, the plaintiffs are entitled to relief in this proceeding as to the second mortgage lien only if the value of their residence is less than the amount owed on the first mortgage lien,[5]

And the plaintiffs' appraiser, Mr. Ashford, relied upon three sales of properties, all within 1.74 miles of the residence and all occurring in October and November 2009. One of the sales was located in Exton, Pennsylvania. The other two sales were located in West Chester. Based upon adjustments for condition, location and features, Mr. Ashford established adjusted sale prices of $277,000, $225,000 and $244,025 for these three comparables. Ex. 1. These adjusted sale prices average $248,675,

And similarly, HSBC's appraiser, Mr. Freeman, relied upon four comparable sales. These four properties are located within 2.1 miles of the debtors' residence, were all located in West Chester, and sold between September 24, 2009 and November 30, 2009. Based upon adjustments for condition, location and features, Mr. Freeman adjusted the sale prices to $287,000, $307,500, $295,150 and $347,500 for these comparables. Ex. D-1. The adjusted sales prices average $309,287.50,

---

[5]As the Third Circuit noted, courts are divided as to the relevant valuation date. See In re McDonald, 205 F.3d at 615. Here, for reasons not explained, both parties consider the date of March 5, 2010 germane. Furthermore, both appraisal reports state that property values in the debtors' location are "stable." Exs. 1, D-1. Therefore, the value of the realty would be unchanged if the bankruptcy filing date in April 2010, or some postpetition date, were relevant. Thus, I need not address this issue.

And after reviewing the appraiser reports and the testimony offered at trial, including the testimony of Ms. Butler, it is undisputed that the plaintiffs' residence is a 47 year-old colonial style home, on about a ½ acre lot, located in West Chester, Pennsylvania, with the residence consisting of nine rooms, including four bedrooms, totaling about 1,900 sq. ft of livable space.[6] It has a one-car attached garage, patio and no basement. I conclude that, because of its incomplete renovations and age and limited features, its condition is slightly below average,

And the average value of the two appraisal reports from appraisers of considerable experience and unchallenged expertise is $274,500. See, e.g., Albuquerque Chemical Co., Inc. v. Arneson Products, Inc., 201 F.3d 447 (table), 1999 WL 1079600, at *2 (10th Cir. 1999) (fair market value was average of the two appraisals); In re Atwood, 2001 WL 34050701, at *4 (Bankr. D. Vt. 2001) (same); cf. Rohm and Haas Co. v. American Finance Group, Inc., 1988 WL 115786, at *1 (E.D. Pa. 1988) (agreement of the parties determined fair market value by averaging appraisal reports),

And the average adjusted sales price of the six West Chester homes, all sold in the fall of 2009, is $289,941.67.[7] See In re Perez, 2009 WL 3809603 (Bankr. N.D. Cal. 2009). This average adjusted comparable sale price, with the electrical appliance

---

[6]Exhibit 1 uses 1,860 sq. ft. and exhibit D-1 uses 1,904 sq. ft. of interior space of the plaintiffs' residence. The addendum to exhibit D-1, however, notes that township assessment records reflect a square footage of only 1,664.

[7]By eliminating from consideration the sale of the Exton realty, the average consists of the four comparable sales considered by HSBC's appraiser and two by the plaintiff's appraiser. Thus, the average gives greater weight to the views of Mr. Freeman regarding adjustments, without ignoring the viewpoint of Mr. Ashford.

limitations mentioned by Mrs, Butler, persuade me that the fair market value of the plaintiffs' residence is no greater than $290,000,

And upon consideration of all the evidence, I conclude that the plaintiffs have met their burden in demonstrating that the value of their residence is less than or equal to $295,971.33. Accordingly, the second lien held by the defendant is wholly unsecured for purposes of section 506 and is not protected by the antimodification provisions of section 1322(b)(2).

An appropriate order will be entered.

*/s/ Bruce Fox*
_____
BRUCE FOX
United States Bankruptcy Judge

Dated: November 15, 2010